UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LANG SHI, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 1:25-CV-274 |
| | § | |
| | § | |
| TODD LYONS, *et al.*, | § | |
| | § | |
| Respondents. | § | |

# ORDER

Petitioner Lang Shi is currently detained by Immigration and Customs Enforcement at the Post Isabel Service Processing Center ("PISPC") in Cameron County, Texas. Shi presents a petition for writ of habeas corpus and requests a preliminary injunction ordering Respondents to provide him with a bond hearing or release him from custody. Respondents contend that Shi is subject to mandatory detention and is not entitled to a bond hearing.[1]

Based on the record and the applicable law, and after conducting a hearing on the matter, the Court concludes that Shi has met the prerequisites for a preliminary injunction ordering that Respondents release him absent him being afforded a bond hearing.

## I.    Factual Background and Procedural History

Shi is a citizen of China. In September 2023, he entered the United States without inspection and ultimately began living in New York. At some point, Shi timely filed a Form I-589 Application for Asylum and for Withholding of Removal. That application remains pending.

In September 2025, ICE arrested Shi and placed him in standard removal proceedings on the grounds that he is inadmissible under 8 U.S.C. § 1182(a)(6)(A) as an "alien present without

---

[1] In their response to Shi's arguments, Respondents also move for summary judgment. (Resp., Doc. 14).

1 / 12

admission or parole[.]" (Notice to Appear, Doc. 1-2, 1) Shi remains detained in Cameron County, Texas, at the PISPC, which is within the jurisdiction of this Court.

An immigration officer conducted an immigration inspection of Shi and determined that he had not been previously admitted and that he was not clearly and beyond a doubt entitled to be admitted.

Shi requested a bond hearing before an Immigration Judge, who refused to consider the matter on the grounds that he lacked jurisdiction to conduct a bond hearing as to Shi. Respondents assert that they detain Shi under 8 U.S.C. § 1225(b)(2)(A), which mandates detention for certain aliens and which affords no right to a bond hearing for those aliens.

On November 14, Shi filed his petition for writ of habeas corpus, followed on the same day by a motion for a temporary restraining order and preliminary injunction. He argues that Respondents can detain him solely under 8 U.S.C. § 1226, and not Section 1225. Moreover, he argues that Section 1226 entitles him to a bond hearing before an Immigration Judge.

On December 2, the Court held a hearing on the request for a preliminary injunction.

**II.   Analysis**

To obtain a preliminary injunction, a party must demonstrate (1) a likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) that the balance of equities favors the movant; and (4) that the injunction is in the public interest. *See Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013); *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The third and fourth factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The party seeking a preliminary injunction bears the burden on each prerequisite. *Enter. Int'l, Inc. v. Corporación Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).

Shi challenges the Respondents' reliance on Section 1225 and asserts that his continued detention without a bond hearing violates the Immigration and Nationality Act and his Fifth Amendment Due Process rights.

### A. Relevant Statutes

This case concerns the construction and application of two provisions, 8 U.S.C. §§ 1225 and 1226, codified in the Immigration and Nationality Act (INA), §§ 235 and 236.

Section 1225 is entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing[.]" This statute defines an "applicant for admission" as an "alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . . )[.]" 8 U.S.C. § 1225(a)(1). An immigration officer must inspect "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States[.]" *Id.* at § 1225(a)(3). Sections 1225(b)(1) and (b)(2) then subject certain inadmissible aliens to either expedited removal proceedings or standard removal proceedings. As to the latter category, Section 1225(b)(2)(A) concerns detention: "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" during removal proceedings.

Section 1226 is entitled "Apprehension and detention of aliens[.]" This statute authorizes the arrest of aliens upon a warrant issued by the Secretary of Homeland Security,[2] as well as their detention during removal proceedings. Under Section 1226(a)(1) and (2), the Secretary has discretion to detain an arrested alien or to release the alien on bond or conditional parole. In practice, Immigration Judges conduct hearings to determine whether to grant bond to arrested aliens during the pendency of their removal proceedings.[3] Section 1226(c), however, removes the

---

[2] The Homeland Security Act of 2002 transferred the primary responsibility for enforcing immigration laws from the Attorney General to the Secretary of Homeland Security. *See* Pub. L. No. 107-296, 116 Stat. 2135 §§ 441–46 (2022). However, the United States Code largely retains the old nomenclature.

[3] *See* 8 C.F.R. § 236.1(d)(1) (permitting a detained alien to request a bond hearing before an Immigration Judge).

possibility for bond or parole for certain aliens, largely defined as aliens who have committed certain criminal offenses.

Before July of this year, past administrations had applied Sections 1225 and 1226 relatively consistently, utilizing Section 1225 as to aliens presenting themselves for admission at a port of arrival or who had been arrested near the border shortly after attempting to enter the United States without inspection. As to aliens who had lived in the country for some period of time– including those aliens admitted lawfully, as well as those who evaded detection when crossing the border unlawfully–the government applied Section 1226. The Supreme Court has summarized this historical application of these two provisions:

> In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).

On January 29, 2025, President Donald Trump signed into law the Laken Riley Act, Pub. L. 119-1, 139 Stat. 3 (2025), which amended Section 1226. Congress described the Act's purpose as requiring "the Secretary of Homeland Security to take into custody aliens who have been charged in the United States with theft, and for other purposes." Pub. L. 119-1, 139 Stat. 3, 3 (2025). In relevant part, the new law added a category of aliens subject to mandatory detention under Section 1226(c):

> The [Secretary] shall take into custody any alien who– . . . (E)(i) is inadmissible under paragraph 6(A), 6(C), or (7) of section 1182(a) of this title; and (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements [of several specified crimes].

8 U.S.C. § 1226(c)(1)(E). The Act's citation to paragraph 6(A) of Section 1182(a) references one category of inadmissible aliens. Section 1182(a)(6)(A) establishes that "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the [Secretary], is inadmissible."

In July 2025, the Department of Homeland Security ("DHS") issued a directive concluding that Section 1225 applies to any alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. Such aliens, according to the directive, would be subject to mandatory detention under Section 1225(b)(2), and would not receive a bond hearing under Section 1226(a).[4]

On September 5, the Board of Immigration Appeals ("BIA") adopted the new DHS policy in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). Based on this ruling, the BIA concluded that Immigration Judges lack jurisdiction to hold a bond hearing for an alien present in the United States when detained and who had not been admitted into the country. DHS's directive, and the BIA's adoption of the legal position in that document, has generated significant litigation by detained aliens.[5]

### B. Substantial Likelihood of Success on the Merits

Shi has demonstrated that he is likely to succeed on the merits of his argument that Respondents may not rely on Section 1225 to detain him, but must do so under Section 1226.[6]

As the issue in this lawsuit centers on the application of statutory language, the text of the statutes governs. "Absent congressional direction to the contrary, words in statutes are to be construed according to their ordinary, contemporary, common meanings." *Texas v. Trump*, 127 F.4th 606, 611 (5th Cir. 2025); *see also Wisconsin Cent. Ltd. v. United States*, 585 U.S. 274, 277 (2018) (cleaned up) (explaining that courts normally interpret statutory terms "consistent with

---

[4] Shi references the directive within his brief (Motion, Doc. 3, 10), but no party has submitted the document. Various other courts considering this issue have cited and quoted from "Interim Guidance regarding Detention Authority for Applicants for Admission." *See, e.g., Savane v. Francis*, No. 1:25-CV-6666-GHW, 2025 WL 2774452, at *5 (S.D.N.Y. Sept. 28, 2025); *Martinez v. Hyde*, 792 F. Supp. 3d 211, 217 (D. Mass. 2025).

[5] A federal district court in California recently adopted the legal position that Shi presents in this lawsuit, and then certified a class that arguably encompasses Shi. *See Maldonado Bautista v. Santacruz*, No. 5:25-CV–1873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025). But that court has not yet issued a final judgment, and it is unclear what specific relief the court has afforded to the petitioner or to the class members. As a result, this Court does not consider the California court's ruling as impacting the relief that Shi may obtain in the present lawsuit.

[6] Respondents argue that because Shi has not appealed the Immigration Judge's refusal to hold a bond hearing, Shi has not exhausted his administrative remedies. (Resp., Doc. 14, 3–4) But in light of *Matter of Yajure Hurtado*, such an appeal would have been patently futile, representing the extraordinary circumstances that warrant consideration of Shi's motion without requiring him to exhaust his administrative remedies.

their ordinary meaning at the time Congress enacted the statute"). Absent ambiguity in language, courts apply a statute's plain meaning. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). At the same time, "the plainness or ambiguity of statutory language is determined not only by reference to the language itself, but as well by the specific context in which that language is used, and the broader context of the statute as a whole." *Yates v. United States*, 574 U.S. 528, 537 (2015) (cleaned up). Courts apply accepted canons when construing statutes. For example, "different words within the same statute should, if possible, be given different meanings." *BNSF Ry. Co. v. United States*, 775 F.3d 743, 755 n.86 (5th Cir. 2015).

Here, Respondents contend that a straightforward reading of Section 1225 encompasses aliens such as Shi, who enter the United States without being detected and remain in the country for some period of time before being arrested. Respondents observe that Section 1225(a)(1) defines an "applicant for admission" for purposes of the statute as an "alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . . )[.]" Under the literal application of this definition, Shi qualifies as an applicant for admission, as he was present in the United States when arrested, and he had not been previously admitted. After his arrest, an immigration officer determined that Shi was not clearly and beyond a doubt entitled to be admitted, requiring his detention under Section 1225(b)(2)(A). Respondents note that various federal district courts have construed the statute in this manner. *See, e.g.*, *Cabanas v. Bondi*, No. 4:25-CV-04830, 2025 WL 3171331 (S.D. Tex. Nov. 13, 2025); *Rene Garibay-Robledo v Kristi Noem, et al.*, No. 1:25-cv-00177-H, 2025 WL 3264478 (N.D. Tex. Oct. 24, 2025).

Shi presents a competing construction. He argues that Section 1225(b)(2)(A) applies only to aliens who qualify as "applicants for admission" and who also are "seeking admission." The provision uses both phrases, and Shi contends that a proper construction requires ascribing differing meanings to each phrase. According to Shi, Congress used present tense for "seeking

admission," and this usage limits the provision to encounters with aliens at or near the United States border, when aliens seek to enter the country, whether through a port of arrival or surreptitiously. Under this construction, aliens who have entered and remained in the country for some period of time are no longer "seeking admission" and do not fall within Section 1225(b)(2)(A). Most federal district courts that have considered the same legal issue that Shi presents in this lawsuit have adopted this construction of Section 1225(b)(2)(A). *See, e.g.*, *Martinez v. Trump*, No. CV 25-1445, 2025 WL 3124847 (W.D. La. Oct. 22, 2025), *appeal noticed* (5th Cir. Oct. 24, 2025); *Lopez Santos v. Noem*, No. 3:25-CV-01193, 2025 WL 2642278 (W.D. La. Sept. 11, 2025); *Cardenas Perez v. Noem et al.*, No. 1:25-CV-181 (S.D. Tex. Oct. 31, 2025), *report and recommendation adopted*, *Cardenas Perez v. Noem et al.*, No. 1:25-CV-181 (S.D. Tex. Nov. 20, 2025); *Buenrostro-Mendez v. Bondi*, No. H-25-3726, 2025 WL 2886346 (S.D. Tex. Oct. 7, 2025) (listing cases).

The Court finds both constructions textually permissible, although in some respects, Respondents present the stronger argument. Section 1225 contains broad language with no express temporal or geographic limitations. And some linguistic difficulties exist with Shi's proposed construction. For example, for purposes of Section 1225(b)(2)(A), Shi focuses on a perceived distinction between "applicants for admission" and aliens "seeking admission." But Section 1225(a)(3) raises an obstacle to such a reading. That provision requires that immigration officers inspect "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission or readmission[.]" The use of "otherwise" renders "applicants for admission" a subset of "seeking admission"–i.e., the former represents one example of the latter. This language supports Respondents' position that courts should construe "applicants for admission" and "[aliens] seeking admission" in Section 1225(b)(2)(A) as synonymous.

Still, each litigant presents a permissible construction. And in such scenarios, courts turn to other canons of construction to resolve the matter. In this case, the application of those canons

leads this Court to conclude that Section 1225 applies only to aliens at the time of their arrival at a United States border, whether presenting themselves at a port of arrival, or after being arrested while attempting to enter the country without detection.

Of greatest relevance are the canons aimed at avoiding surplusage and seeking to construe related statutes harmoniously. Typically, courts apply these canons when construing different terms within the same statute. For example, in *United States v. Taylor*, 596 U.S. 845 (2022*)*, the Supreme Court rejected the government's interpretation of one provision within a criminal statute that would "effectively replicate the work" of a separate clause within the same statute. The Supreme Court reasoned that courts "do not lightly assume Congress adopts two separate clauses in the same law to perform the same work." *Taylor*, 596 U.S. at 857; *see also Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 103 (2012) ("We will not construe § 906(c) in a manner that renders it 'entirely superfluous in all but the most unusual circumstances.'") (*quoting TRW Inc. v. Andrews*, 534 U.S. 19, 29 (2001)).

The doctrines also apply, however, to construe related statutes in a manner that avoids one statute nullifying portions of another. *See e.g.*, A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts § 27 (2012) (discussing the Harmonious-Reading Canon). For example, the Supreme Court recently rejected a construction of a statute that would render portions of related statutes unnecessary. *See Fischer v. United States*, 603 U.S. 480 (2024). As explained in that decision: "Federal obstruction law consists of numerous provisions that target specific criminal acts and settings. . . . Much of that particularized legislation would be unnecessary if (c)(2) criminalized essentially all obstructive conduct, as the Government contends." *Id*. at 492. The Supreme Court recognized that "the Government's all-encompassing interpretation may be literally permissible," but it rejected such an interpretation because, in part, accepting the construction would "render[ ] an unnerving amount of statutory text mere surplusage." *Id*. at 498.

8 / 12

As applied in the present case, these canons support a construction of Section 1225 that limits the statute to aliens inspected when they present themselves at a port of arrival or who are arrested near a United States border shortly after attempting to enter the country without detection. Under Respondents' construction, Section 1225 encompasses any alien who enters the United States without being admitted, whether the individual has been present in the country for five minutes or five years. Under Section 1225(b)(2)(A), these aliens are subject to mandatory detention if an immigration officer finds that they are not clearly and beyond a doubt entitled to be admitted. Accepting this construction, however, would render Section 1226(c)(1)(E) a nullity. That provision obligates the mandatory detention of any alien "inadmissible under paragraph 6(A) . . . of section 1182(a)" and who commits certain crimes. The referenced Section 1182(a)(6)(A) refers to aliens "present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the [Secretary of Homeland Security.]" Under Respondents' proposed construction, every alien encompassed by Section 1226(c)(1)(E) would already fall within Section 1225. In other words, Section 1226(c)(1)(E) would represent a wholly-encompassed subset of Sections 1225(a)(1) and (b)(2)(A).

This result bears particular weight because less than one year ago, Congress enacted the Laken Riley Act, which added Section 1226(c)(1)(E). "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 189 (2020); *see also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."). Accepting Respondents' position would strip any "real and substantial effect" from the language that the Laken Riley Act added to Section 1226(c), as the Secretary could rely on Section 1225 to mandatorily detain every alien subject to Section 1226(c)(1)(E).

Relatedly, "[w]hen Congress adopts a new law against the backdrop of a 'longstanding administrative construction,' the Court generally presumes the new provision should be understood to work in harmony with what has come before." *Monsalvo v. Bondi*, 604 U.S. 712, 725 (2025) (quoting *Haig v. Agee*, 453 U.S. 280, 297–98 (1981)). For decades, succeeding administrations have applied Section 1225 only to individuals who presented themselves at a United States border or who were arrested while attempting to enter the country other than at a port of arrival. They applied Section 1226 to individuals arrested after having entered the country without detection and who had lived in the country for some period of time. Congress enacted the Laken Riley Act in this historical context. Had the generally understood meaning of Section 1225 been what Respondents now claim, Congress would have had no need to add Section 1226(c)(1)(E).

In contrast, Shi's proposed construction avoids the nullification of Section 1226(c)(1)(E) and represents an application of both statutes that the Government has followed for decades. In addition, this construction aligns with the Supreme Court's description in *Jennings*. In that case, the Supreme Court explained that "§ 1225(b) applies primarily to aliens seeking entry into the United States ('applicants for admission' in the language of the statute)." *Jennings*, 583 U.S. at 297. In contrast, "§ 1226 applies to aliens already present in the United States." *Id.* at 303. Although the Supreme Court's description constitutes *dicta*, it reveals that limiting Section 1225 to aliens encountered at the United States border at the time they seek to enter the country, whether lawfully or unlawfully, represents a plausible and harmonious construction of both statutes. And when a court is confronted by two permissible interpretations of statutory text, a canon of construction can lead to favoring one construction over the other. *See id.* at 298 (explaining that the canon of constitutional avoidance "permits a court to 'choos[e] between competing plausible interpretations of a statutory text'") (quoting *Clark v. Martinez*, 543 U.S. 371, 381 (2005)); *see also* A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts § 26

(2012) ("[I]f a provision is susceptible of (1) a meaning that deprives another provision of all independent effect, and (2) another meaning that leaves both provisions with some independent operation, the latter should be preferred."). Here, the canon of surplusage and of harmonious construction each favors Shi's position.

### C. Substantial Threat of Irreparable Harm, the Balance of the Equities, and the Public Interest

Absent a preliminary injunction, Respondents will continue to detain Shi pending his removal proceedings and during the pendency of this lawsuit. He will not be afforded an opportunity to request a bond from an Immigration Judge under Section 1226(a), and to appeal from any denial of a bond.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The protection of the Due Process Clause extends to noncitizens. *Id.* The Court finds that Shi's continued detention without the benefit of a statutorily-required right to request a bond from an Immigration Judge violates his Constitutional rights and represents irreparable harm.

The balance of the equities and the public interest also favor Shi. Respondents' interest in immigration detention is to "assure the appearance of aliens at future immigration proceedings and prevent[ ] danger to the community." *Id.* As immigration detention is nonpunitive, *id.*, Respondents possess no interest in detaining immigrants who are not a threat to the community or in danger of absconding. To the extent that Respondents maintain that Shi presents such concerns, they may present their argument at a bond hearing for the Immigration Judge to consider. Thus, detention under Section 1226(a), rather than Section 1225(b)(2)(A), does not undermine the purposes of immigration detention, and these factors weigh in Shi's favor.

### D. Appropriate Remedy

Petitioner has demonstrated a substantial likelihood of demonstrating that Respondents may detain him solely under the auspices of Section 1226 and not Section 1225. And "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)). Accordingly, the appropriate remedy is to afford Shi the rights he possesses as an alien subject to detention under Section 1226. He is entitled to a bond hearing and any available appellate remedies should he be denied bond.

### III. Conclusion

The Court concludes that Petitioner has satisfied the prerequisites for a preliminary injunction. As a result, it is:

**ORDERED** that Petitioner Lang Shi's Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 2) is **GRANTED**.

In addition, for the reasons contained in this Order, it is also **ORDERED** that Respondents' Motion for Summary Judgment (Doc. 14) is **DENIED**.

The Court will separately issue a Preliminary Injunction in accordance with this Order.

Signed on December 12, 2025.

Fernando Rodriguez, Jr.
United States District Judge